WILLIS LONG AND W. B. LONG *v.* JOHN M. NEVILLE.

| 36 | 455 |
| 77 | 54 |

SERVICE OF WRIT OF POSSESSION BY A SHERIFF.—When a Sheriff goes to execute a writ of possession issued on a judgment in an action to recover land, if he finds other parties in possession than those named in the complaint, who claim that they are rightfully in possession, not in privity with the defendants, and the circumstances are such that a reasonable doubt exists whether the Sheriff has a right to turn them out, the Sheriff may demand indemnity, and, unless it is given, may refuse to execute the writ. This is the law, even if the premises are specifically described in the writ.

APPEAL from the District Court, Seventh Judicial District, Solano County.

The facts are stated in the opinion of the Court, and in 29 Cal. 131, where the case is reported on a former appeal.

*William S. Wells,* for Appellants.

The Sheriff had a right to demand indemnity, and until such demand was complied with, he could not be compelled to proceed and expose himself to damages. (*Marsh* v. *Gold,* 2 Pick. 289; *Chamberlain* v. *Beller,* 18 N. Y. 115; *Curtis* v. *Patterson,* 8 Cow. 65; *Platt* v. *Sherry,* 7 Wend. 236; *Smith* v. *Cicotte,* 11 Chick. 383; *Patterson* v. *Anderson,* 40 Penn. St. 359; *Bond* v. *Ward,* 7 Mass. 125, and cases cited; *Humphreys* v. *Pratt,* 2 Dow & Clark, 288; *Adamson* v. *Jarvis,* 4 Bing. 72; *Perley* v. *Foster,* 9 Mass. 113.)

*M. A. Wheaton,* for Respondent.

We believe that in no case is an officer entitled to demand

indemnity before proceeding with process when he is fully informed upon all the facts concerning the *status* of persons and property against which his process is directed. The cases cited by appellants show plainly that the only occasions on which a Sheriff may demand indemnity are either when he proceeds under a party's direction, or when there are reasonable doubts as to the *status* of the property against which he acts, and the party requires him to proceed in spite of reasonable doubts as to the facts, which he must know before it is safe for him to act. In this case Neville's doubts and mistakes were all of law and none of fact. By the common law the writ did not describe the premises of which the Sheriff was to deliver possession, but the Sheriff followed the plaintiff's directions as to what land he took. On this account, because the plaintiff controlled the Sheriff, he was bound to indemnify him. The common law rule is stated in Adams on Ejectment, page 411, fourth edition. Neither the common law rule of indemnity nor the reason for it exist here. But in our practice the judgment describes the land, and the Sheriff acts, not under the direction of the plaintiff in the suit, but solely in obedience to the writ which he holds. It is his duty to obey the writ, certainly, when he is fully informed as to all of the facts concerning the subject matter of the writs. Like every one else, he is bound to know the law, and if he also knows the facts, he then knows his duty, and knowing his duty, he must do it; if he only does his duty he has no use for indemnifying bonds, for they can never be used.

By the Court, Sawyer, C. J.:

Martin A. and J. T. Hull, being in possession of the premises in question, one R. B. Ellis commenced a suit against them in the County Court of Solano County to recover the possession, alleging in his complaint that the said Hulls entered under a lease from said Ellis, dated November 2d, 1860, for a term ending November 1st, 1861; that the term

had expired, that possession had been demanded in writing and refused, and that said defendants wrongfully withheld possession. After a trial by jury and verdict for plaintiff, judgment was rendered for restitution of the premises, damages, and costs, on the 24th of December, 1861. Subsequent to the entry of said judgment, to wit: on the 31st of December, 1861, W. & W. B. Long, the plaintiffs in this action, also commenced a suit against said Hulls to recover the same premises, and on the 29th of May, 1862, recovered a judgment by default for the possession of the premises, as against defendants, J. T. Hull and M. A. Hull, and all persons holding by, through, or under them. Before the recovery of the last named judgment—on the 5th .of May, 1862—a writ of restitution was issued upon the judgment in the said cause of *Ellis* v. *Hull & Hull,* under which the Hulls were turned out, and Ellis placed in possession, which writ was returned with the acts of the Sheriff indorsed thereon, on the 17th of May, 1862. One William Brown then went into possession as the tenant of said Ellis. Afterwards, on the 2d of June, 1862, a writ of possession was issued upon the said judgment of May 29th, 1862, in the case of *Long et al.* v. *Hull et al.,* and placed in the hands of Neville, defendant in this suit, who was Sheriff of the county at that time, for execution. This writ was returned on the 19th of August, 1862, with the following return indorsed thereon: "I return the within writ not executed, neither of defendants named therein being in possession of the premises, and having been warned by other parties in possession of the same claiming title thereto, to execute the same at my peril, and having demanded from the plaintiffs a bond of indemnification, the same having been refused, I have refrained from further action in the premises." In the meantime the plaintiffs in that suit, without success, applied to the County Court, and afterwards to our predecessors, for a mandate to compel the Sheriff to execute the writ. This action is brought by the Longs against the Sheriff, Neville, and his bondsmen, alleging a

false return and neglect and refusal to execute said writ, and seeking to recover damages. Plaintiffs had judgment, and a motion for new trial having been made and denied, defendants appeal.

The principal ground of defense is, that when the Sheriff went to execute the writ, he found other parties in possession than those named in the complaint and judgment, who claimed to be rightfully in possession, and not in privity with the defendants, and not subject to be dispossessed under the writ, who informed the Sheriff that if he turned them out, it would be at his peril; that, thereupon, he notified the plaintiffs in the action of said claim and threat, and demanded an indemnity before proceeding to execute the writ, which they refused to give, and upon that ground he declined to assume the responsibility of executing the writ, and returned it with his doings and reasons for not executing it. If this is a good defense, that is, if defendant was entitled to demand indemnity under the circumstances, then the judgment is erroneous and must be reversed, for this state of facts appeared at the time when the plaintiff rested, and the motion for a nonsuit on this ground was made and denied, and no evidence tending to show the return to be false in fact had been introduced. Besides, subsequently, there was an instruction to the jury, not very well drawn, perhaps, but substantially presenting the question asked by the defendant and refused, to which refusal an exception was duly taken. This question was not presented when the case was here before.

There can be no doubt that when an attachment or execution is placed in the hands of an officer to be executed, he may demand indemnity of the plaintiff in the execution before he can be required to seize property in the possession of third parties claiming to be the owners, and that if the plaintiff, upon demand, fails to indemnify the officer, and he, thereupon, returns the writ *nulla bona*, an action for false returns cannot be maintained, even if it should turn out that the goods so found in the hands of strangers claiming to own

them, were the goods of the defendant in the writ. (*Marshall* v. *Hosmer*, 4 Mass. 63; *Bond* v. *Ward*, 7 Mass. 125; *Marsh* v. *Gold*, 2 Pick. 290; *Chamberlain* v. *Beller*, 18 N. Y. 117.) Where statutes exist providing for calling a Sheriff's jury preliminary to demanding indemnity, it may be necessary to call a jury before demanding the indemnity, unless the calling of a jury be waived. (*Curtis* v. *Patterson*, 8 Cow. 67.) In *Marsh* v. *Gold*, Mr. Chief Justice Parker says: "An officer called upon to serve a precept either by attaching property or arresting the person, if there be any reasonable grounds to doubt his authority to act in the particular case, has a right to ask for an indemnity. He is not obliged to serve process in civil actions at his own peril, when the plaintiff in the suit is present, and may take the responsibility upon himself. And, it has been decided, that the Sheriff has a right to require indemnity of the creditor, when he shall be directed to attach chattels, the property in which may be questionable. (*Marshall* v. *Hosmer*, 4 Mass. 63.) The same right exists when the Sheriff shall be directed to arrest the body of any man, and he has reasonable doubts of the identity of the person. There can be no reason why the same principle should not apply where there may be doubts of the lawfulness of arrest *on other* grounds." (2 Pick. 289.) And in *Chamberlain* v. *Beller*, Mr. Justice Roosevelt says: "The officer, in demanding the bond, sought no advantage to himself, but simply desired, as it was natural he should, to protect himself against loss. The risk he was required to run was not for his benefit, but for the benefit of the attaching creditor. If the goods, moreover, as the creditor alleged, were the property of his debtor beyond dispute, he, the creditor, could not be injured by giving the indemnity, and if they were not, it was right that he who, for his own supposed advantage, insisted on the seizure, should take the consequences of the act. Such would seem clearly to be the dictate of common sense and common justice; in other words, in the absence of contrary authority, of common law." In *Tevis* v. *Ellis*, judgment had been recovered against Cal-

derwood on an adverse title, and Tevis put in possession on
a writ of restitution on the 16th of April, 1863. A second
judgment had been recovered by other parties against Cal-
derwood by default, and, as alleged, by collusion, for the
same premises, on the 5th of June, 1863, upon a complaint
filed on the 10th of March, 1863, before Tevis was put in
possession. We held that, under the circumstances, the
Sheriff would be a trespasser in turning out Tevis under a
writ issued under the second judgment. (25 Cal. 516.) So,
in *Wattson* v. *Dowling*, 26 Cal. 127, we held that a party *right-*
*fully* in possession under his own title could not properly be
dispossessed under a writ issued in a suit to which he was in
no way a party, or in privity with a party, even though he
entered after suit brought. And in the present case, when
here before, we cited the case of *Jones* v. *Chiles*, 2 Dana, 25,
as indicating an instance in which a Sheriff would not be
justified in turning out a party who has come into possession
pending the suit, under a writ of possession issued under a
judgment recovered in another suit against the same defend-
ants upon an adverse title. (29 Cal. 136.) There are cases,
then, in which the Sheriff would not be justified in turning
out parties in possession who are not parties to the suit, or
named in the writ, even though they may have entered after
suit brought; and the question, whether a party found in
possession when the writ issues, but not a party to the suit,
must go out or not, is often one of great nicety. To deter-
mine the question, it is necessary that the officer should both
accurately ascertain the facts, and then determine the law
correctly. In both particulars there is great liability to error.
This very case affords an excellent illustration of the embar-
rassment under which an officer would labor, if he was, in
such cases, compelled to decide these questions at his peril.
After a full litigation of the question, the right of the Sheriff
to turn out Brown under the writ, on appeal, and after care-
ful consideration, this Court once held that Brown could not
be dispossessed, but on rehearing granted, and after a further
and more mature consideration, it was finally determined by

a bare majority of the Court that Brown must go out, and on the facts as there presented, that the Sheriff was liable for not executing the writ. If the Courts, after due investigation, with all the means at their command necessary for the purpose, find great difficulty in determining the question, how is a mere ministerial officer, possessing none of their facilities, to ascertain the facts and apply the law correctly? The officer has no personal interest in the matter, and in a case of doubt, like the one in question, when the parties in interest are unwilling to take the responsibility and hold him harmless, why should he be compelled to act at his peril?

We see no reason why the remarks of Mr. Justice Roosevelt in *Chamberlain* v. *Beller*, before cited, do not apply with equal force to the case in hand. We do not perceive that the fact that the premises are specifically described, makes any difference; for we have seen that, even in such cases, there may be parties in possession who cannot be turned out without committing a trespass. Suppose Jones is clearly the owner, and in undisputed possession of a lot, and a suit is brought against Smith, who is out of possession, to recover it, and judgment taken by default, or collusion, there can be no doubt that the ejection of Jones, against his protest, under a writ giving a specific description of the premises, would be a trespass. If not, there would be a very easy way of recovering the possession of lands—much easier, and less expensive than serving the owner in possession. A warrant of arrest describes the party to be arrested. Yet Mr. Chief Justice Parker says, in language already cited: "The same right exists when the Sheriff shall be directed to arrest the body of any one, and he has reasonable doubts of the identity of the person. *There can be no reason why the same principle should not apply when there may be doubts of the lawfulness of arrest on other grounds.*" (2 Pick. 290, *supra.*) So, here, there is no reason why the same principle should not apply, where doubts exist, as to whether strangers to the suit, in possession, when the writ issues, may be lawfully turned out.

The judgment, in terms, only authorized "said defendants, I. T. Hull and M. A. Hull, and all persons holding by, through, or under them," to be turned out of possession; and it is left to the officer to determine, at his peril, whether Brown did hold, "*by, through, or under them.*" And so generally, when a stranger to the suit, in possession, claimed to be rightfully there, and not liable to be turned out, although the premises are correctly described, it is still necessary to ascertain the facts, and determine under the law, whether he is liable to go out.

We think it clear that the case afforded reasonable grounds for the Sheriff to entertain doubts as to his authority to turn Brown out, and that, upon such doubts arising, he was justified in demanding indemnity from the plaintiffs before executing the writ. He was not bound to determine at his own peril the delicate and important questions of law and fact involved in the claim of parties, apparently strangers to the suit, in actual possession. If the parties interested were not willing to take the responsibility, there certainly is no reasonable ground for requiring the Sheriff to proceed at his peril for their benefit.

Judgment and order denying a new trial reversed and new trial granted.