CITY OF PROVIDENCE FOR BENEFIT OF ADELARD MAYO vs.
SAMUEL GOLDENBERG.

SAME FOR BENEFIT OF THOMAS MAGUIRE, p. a. vs. SAMUEL
GOLDENBERG.

MAY 29, 1922.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

*(1)  Bonds.  Verdicts.  Chancerization of Bond.*

In an action on a bond the jury found for the plaintiff and assessed damages
in the penal sum of the bond and the jury chancerized the bond in a
particular amount.  The court received the verdict on chancerization of
the bond and directed a verdict for the penal sum.—

*Held,* reversible error, for under Gen. Laws, cap. 294, §§ 3 and 4, judgment
should be entered for the penal sum before the court should proceed either
with or without a jury to determine for what sum execution should issue,
and moreover judgment could not be entered without consent of defendant
until after the expiration of seven days after rendition of the verdict for
the penal sum.

*(2)  Bonds.  Verdicts.  Chancerization of Bond.*

*It would seem* that if parties to an action on a bond, desire to have the question
of liability and also the question for what amount execution should be
awarded, if the jury find for the plaintiff, decided at the same time by a
jury, and at the same time reserve their respective rights to attack the
verdict which may be rendered on the question of liability, they are entitled
to agree with the consent of the court to allow the jury which passes on the
question of liability to also pass upon the question as to the amount for
which an excution should issue in the event of a final judgment for the
plaintiff for the penal sum of the bond.

*(3)  Bonds.  Seals.  Actions.*

A seal is required to constitute an instrument a bond, and where an action of
debt on bond was brought on an instrument having all the formal requisites
of a bond except that a seal was not attached, a motion to direct a verdict
for defendant should have been granted.

DEBT ON BOND.   Heard on exceptions of defendant and
sustained.

RATHBUN, J.   These two cases are actions of debt on
bond, brought in the name of the City of Providence, for the
benefit respectively of said Mayo and Maguire.  The in-

strument upon which each of these actions is brought is termed a "Motor Bus License Bond" and contains all the formal requisites of a bond with the exception that no seal is attached to said instrument.

It appears that one Jacob Goldenberg desired to obtain from the Board of Police Commissioners of said city a license to operate a motor bus within said city for the purpose of transporting passengers for hire; that the instrument in question was executed by said Jacob Goldenberg as principal and by the defendant as surety and that by the terms of said instrument both principal and surety are bound to said city in the penal sum of $2,000. The obligation clause in said instrument recites that said Board of Police Commissioners has pursuant to the provisions of the Public Laws of the State and the ordinances of said city granted to said principal a motor bus license and that said principal and surety have jointly and severally agreed to pay all damages sustained by any person and caused by any negligent or unlawful act on the part of said principal or his agents in the conduct of the principal's business as a motor bus operator. Said clause further provides that nothing contained in said instrument shall be construed as imposing any liability inconsistent with the law relative to contributory negligence.

The declaration in each case alleges that said Jacob Goldenberg as principal and the defendant Samuel Goldenberg as surety by their written obligation sealed with their seals jointly and severally promised to pay to said city the "sum of $2,000 upon the terms and conditions set forth in said bond." The declaration in each case alleges as a breach of the condition of said "bond" that the motor bus of said principal, while employed in the business for which said license was granted, was negligently driven against the person for whose benefit the suit was brought to the injury of said person while he was in the exercise of due care.

The cases were tried together before a justice of the Superior Court sitting with a jury. The jury apparently found in each case that the negligence of said principal was

the proximate cause of the injury and that the person for whose benefit the first suit was brought was damaged to the extent of $125, and that the person for whose benefit the second suit was brought was damaged to the extent of $600. The verdict in the first case was as follows: "The jury find that the Defendant did promise and does owe in manner and form as the Plaintiff has in his declaration thereof complained against him and assess damages for the Plaintiff in the penal sum of $2,000 and the jury chancerize said bond in the sum of $125." The verdict in the second case was the same with the exception that the final figures were $600 instead of $125.

The transcript contains the following memorandum: "(Court received verdict of the jury on chancerization of the bond, and at the same time directed a verdict for the penal sum of the bond. Defendant's counsel thereupon objects and refuses to give his consent to such a verdict being received. Defendant's exception overruled and exception noted.)"

Each case is before us on the defendant's said exception and also on his exception to the refusal of the trial court to direct a verdict for the defendant.

Did the trial court err in permitting the jury, which rendered the verdict for the penal sum, to chancerize the bond, or in other words to determine the amount for which an execution should issue? Sections 3 and 4 of Chap. 294, Gen. Laws, 1909, provide as follows: "Sec. 3. In all actions brought for the breach of the condition of a bond, or to recover a penalty for the non-performance of any covenant, contract, or agreement, when it shall appear, by verdict, default, submission, or otherwise, that the condition is broken or the penalty forfeited, judgment shall be entered in the common form for the penal sum, but execution shall issue thereon as is provided in the following three sections." "Sec. 4. The court shall award an execution in such case for so much of the penal sum as shall then be due and payable in equity and good conscience, for the breach of the

condition, or other non-performance of the contract; which sum shall be ascertained and determined by the court, unless either party, before the day fixed for hearing thereon, shall move to have it assessed by a jury, or unless the court shall think it proper to have the question so decided, in which case the sum so due shall be assessed by a jury." We think it was the intention of the legislature, as expressed by sections of the statute above quoted, that judgment shall be entered for the penal sum before the court shall proceed, either with or without a jury, to determine for what sum execution shall be awarded. The jury were permitted, against the defendant's objection, to determine the amount for which an execution should be awarded although judgment for the penal sum had not been entered. Judgment could not have been entered without consent until after the expiration of seven days after rendition of a verdict for the penal sum, as the defendant was entitled to have said verdict remain open for a period of seven days in order that he may have an opportunity to commence proceedings to attack the verdict.

In *Bowen* v. *White*, 26 R. I. page 71, this court said: "The jury should have found affirmatively or negatively upon the issues, which, like all issues in the action of covenant, were special. Then, after judgment for the penal sum of the bond, the court or another jury should have assessed the damages, according to equity and good conscience." See also *Blaisdell* v. *Harvey*, 25 R. I. 572; *Tilley* v. *Cottrell*, 21 R. I. page 310.

It was argued that there would be a saving of time and effort by having the amount for which an execution should be awarded determined at the time of the decision or verdict for the penal sum. It is a sufficient answer to say that the legislature has prescribed a different procedure. The defendant's exception to the action of the court in permitting the jury, which found that there had been a breach of the instrument termed a bond, to also determine at the same time the amount for which an execution should be awarded is sustained.

It was stated at the hearing that a practice prevailed in the Superior Court of submitting to the same jury, by agreement of parties, the question of liability on the bond and the question as to the amount for which an execution should be awarded. Parties, of course, may, with the consent of court, agree that, in the event of a verdict for the penal sum, judgment may be entered forthwith for the penal sum and also agree that the jury may proceed to fix the amount for which an execution should be awarded. If judgment is entered for the penal sum it would seem that the defendant would be precluded from thereafter questioning the correctness of the verdict for the penal sum; but if the parties with the consent of court agree to waive their rights to have reviewed the findings of the jury on the question of liability on the bond we think they may properly do so and have both questions at the same time submitted to the jury.

Should the parties in an action of this nature desire to submit both questions at the same time to the same jury and reserve their respective rights to attack the verdict which may be rendered on the question of liability, we think they are entitled to agree, with the consent of court, to allow the jury which passes upon the question of liability on the bond to also pass upon the question as to the amount for which an execution should issue in the event of a final judgment for the plaintiff for the penal sum of the bond.

The defendant's other exception is to the refusal of the court to direct a verdict for the defendant. The defendant contends that in as much as the instrument (in the form of a bond) upon which liability was based did not bear a seal said instrument was not a bond and that the actions should have been brought in assumpsit instead of in debt on bond.

*9 Corpus Juris*, at page 14, states the rule as follows: "As a general rule, in the absence of statute providing otherwise, a seal is of the essence of a bond, and no writing can have the qualities which attach to a bond without the seal of the party executing it, and in the absence of a seal an

instrument will not be construed as a sealed bond, although there is a recital in the body thereof that the obligors and parties have set their hands and seals thereto."

(3) There has been considerable legislation throughout the United States tending to partially or totally abolish the use of seals. In this State the legislature has dispensed with the use of seals in a number of instruments which at common law were required to be sealed. Neither a general nor a special release nor an instrument discharging a mortgage, in whole or in part, is required to be sealed. Gen. Laws, 1909, Chap. 253, § 12. An instrument purporting to convey real estate is a deed although unsealed. The word "covenant" in a deed or instrument to which no seal is affixed has the same effect as though a seal had been affixed thereto. Sec. 4 of said chapter. Section 14, Chap. 32, Gen. Laws, 1909, provides as follows: "Section 14. Whenever a seal is required to be affixed to any paper, the word 'seal' shall be construed to include an impression of such seal made with or without the use of wax or wafer on the paper." This language clearly shows that the legislature did not intend to dispense with the use of seals on all instruments. In *Providence Telegram Co.* v. *Crahan Engraving Co.*, 24 R. I., at 177, STINESS, C. J., said: "As to bonds, there has been no change in the law, and seals seem still to be required."

As the instrument upon which these suits were based is not a bond and as the suits were actions of debt on bond we think that the trial justice should have granted the defendant's motion to direct a verdict in his favor and that the failure to do so was error.

At the time of argument the plaintiff filed a motion that this court permit the declaration to be amended by adding a count in assumpsit. In view of the conclusions which we have already reached we think that the motion must be denied. The motion is denied without prejudice as to any rights which the plaintiff may have to commence any action other than debt.

The plaintiff, if it shall see fit, may appear before this court on the next motion day at ten o'clock a. m., and show cause, if any it has, why an order should not be entered remitting each case to the Superior Court with direction to enter judgment for the defendant.

*George F. Troy*, for plaintiffs.

*Charles R. Easton*, for defendant.